United States District Court
Southern District of Texas

**ENTERED**
May 27, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT     SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| United States of America, *ex rel.*, | § |
| Michael Sorensen, | § |
| | § |
| Plaintiff, | § |
| | § |
| *versus* | § Civil Action H-12-480 |
| | § |
| Outreach Diagnostic Clinic, *et al.*, | § |
| | § |
| Defendants. | § |

## Opinion on Dismissal

1. *Introduction.*

    The United States joins a realtor in his case against two doctors and the health clinic that they owned and directed for sending false claims to Medicare. The doctors and clinic move to dismiss the complaint. Their motion will be denied.

2. *Background.*

    Outreach Eyecare is a health clinic that employs ophthalmologists and optometrists who diagnose and treat glaucoma, among other diseases of the eye. One part of the diagnosis of glaucoma is measuring pressure inside of the eye. Tonometry and tonography are two tests that measure inner eye pressure. Both tests require specific equipment; the equipment used for each test is different.

    Tonometry is the measurement of inner eye pressure at a precise moment. A probe puts weight on the cornea of the eye, and the inner eye's pressure is inferred from its response to the weight.

    Tonography, however, is the measurement of inner eye pressure over a period of time – normally a few minutes. In tonography, a constant weight is held on the cornea. The eye secretes fluid that causes its response to the weight to vary; the eye's pressure changes in response to the constant weight. An instrument measures the inner eye's pressure at intervals throughout the test and graphs the change in pressure.

Medicare's billing system treats tonometry and tonography differently. Providers may bill Medicare for treatment of glaucoma as (a) intermediate or (b) comprehensive services. Both include an array of tests and treatments billed together. Tonometry is included as part of both intermediate and comprehensive services, which are billed under codes 92002, 99344, 92012, 99348, 92004, 92014, or 99349 depending on whether the patient is new and where the test is done.

If the healthcare provider does tests or treatments that aren't included in intermediate or comprehensive services, those additional tests may be billed as special services. Tonography was billed as a special service, under code 92120, until Medicare stopped covering it on January 1, 2012.

3.  *According to the Government.*

Outreach Eyecare is a health clinic run through Outreach Diagnostic Clinic, LLP. Mustapha Kibirige is an ophthalmologist who owns Diagnostic. Eme Agomo, also an ophthalmologist, is the medical director for Eyecare.

The clinic treated patients who were insured through Medicare. The clinic had a national provider identifier and sent claims to Medicare for payment through a contractor, Trailblazer.

Michael Sorensen is an optometrist who worked at the clinic from July 2005 to June 2012. In 2010, Agomo told Sorensen to bill every tonometry test as a separate tonography test, using code 92120. Sorensen told him that he could not do that because tonography is a different test that he does not perform. Agomo said he understood.

Sorensen later discovered that the clinic's technicians were billing a tonography test for every patient that they gave a tonometry test. Sorensen again told Agomo that the clinic could not bill Medicare for tonography tests because the clinic only did tonometry tests; it did not even have the necessary equipment for tonography tests. Agomo agreed and said that he and Kibirige would correct the practice.

The practice was not corrected. Instead, Sorensen continued to raise this issue throughout 2011. During 2011, Agomo called a meeting and told the clinic staff they could continue billing for tonography tests if they included a paper graph with hand plotted results from tonometry tests. Sorensen told Agomo that was improper.

Sorensen eventually left the clinic because he would not authorize billing Medicare for tonography tests he did not perform.

The government says that the clinic and the doctors that owned and ran it submitted at least 14,450 false claims to Medicare for the reimbursement of tonography tests they did not perform and received at least $807,450 from Medicare as a result. When they submitted each claim, they certified that they had done the tonography test and complied with all Medicare laws, regulations, and instructions.

The government says that Kibirige knew about, supervised, and participated in the false billing of Medicare while owning the clinic. It also says he supervised Agomo and conspired with him to continue the false billing and that Agomo tried to conceal the false billing by putting the hand plotted charts in the patients' files.

4. *Requisite Specificity.*

Outreach says that the government has not pleaded its case with the requisite specificity. It says that the government relies on group allegations that do not specify what false statement each defendant made.

To have pleaded a claim of sending false claims to the government, the government must have described the scheme, in detail, as well as reliable indicia that lead to a strong inference that the claims were actually submitted.[1]

5. *Government's Complaint.*

The government says that Agomo told Sorensen (a) to bill for tonography tests, although he was not doing them, (b) how to make the patient's files appear that a tonography test had been performed, and (c) that Agomo and Kibirige were working together on how to bill for tonography tests. It also says that Agomo was the medical director of the clinic, Eyecare, and that Kibirige owned Outreach, which owned the clinic.

Kibirige, and the others, say that the government does not specify the dates or times when they billed for the tests that were not done.

---

[1] U.S. ex. rel. Grubbs v. Kanneganti, 565 F.3d 180, 190 (5th Cir. 2009).

While this claim for fraud has a heightened pleading standard, it is not so high as to require the government to prove its case as it would at trial. Sorensen describes his observations of a scheme to submit false claims to the government, the time frame in which he observed it, each defendant's role in the scheme, and the code that was used to send the false claims to Medicare. He is not required to name a specific false claim and the date on which it was sent.

6. *Conclusion.*

The government describes a scheme, when it was done, who participated in it, and how they tried to cover their tracks. Taking its allegations as true, it has pleaded that Kibirige, Agomo, Diagnostic, and Eyecare illegally sent false claims to the government and profited when the government paid the money claimed. Their motion to dismiss will be denied.

Signed on May 26, 2016, at Houston, Texas.

Lynn N. Hughes
United States District Judge